PROB 12C
(6/16)

Report Date:  January 21, 2022

# United States District Court

### for the

### Eastern District of Washington

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 21, 2022

SEAN F. McAVOY, CLERK

### Petition for Warrant or Summons for Offender Under Supervision

Name of Offender: Ruben Trey Salinas, III          Case Number: 0980 1:20CR02019-SAB-1

Address of Offender:

Name of Sentencing Judicial Officer:  The Honorable Stanley A. Bastian, Chief U.S. District Judge

Date of Original Sentence: November 18, 2020

Original Offense:          Escape from Custody, 18 U.S.C. § 751(a)

Original Sentence:         Prison - 27 months          Type of Supervision: Supervised Release
                           TSR - 36 months

Asst. U.S. Attorney:       Ian Lloyd Garriques        Date Supervision Commenced: July 7, 2021

Defense Attorney:          Robin Collett Emmans        Date Supervision Expires: July 6, 2024

---

## PETITIONING THE COURT

To issue a warrant.

The probation officer believes that the offender has violated the following conditions of supervision:

| Violation Number | Nature of Noncompliance |
|---|---|
| 1 | **Special Condition #3**: You must abstain from the use of illegal controlled substances, and must submit to urinalysis and sweat patch testing, as directed by the supervising officer, but no more than 6 tests per month, in order to confirm continued abstinence from these substances. |

**Supporting Evidence**:  Mr. Salinas is considered to be in violation of his supervised release conditions by consuming controlled substances, methamphetamine and fentanyl, on November 19, 2021, and failing to report to Merit Resource Services (Merit) for urinalysis (UA) testing on November 19, 2021.

On July 8, 2021, this officer met with Mr. Salinas after he released from custody on July 7, 2021.  Mr. Salinas reviewed and signed the judgment and sentence, which outlines the conditions of his term of supervised release.

On July 8, 2021, the substance abuse testing instructions were reviewed with Mr. Salinas. He verbally acknowledged his understanding of the testing program.  He was instructed to call the Merit color line system for the color green. When his color green was called, he was to report to Merit and submit to a drug screen.

Prob12C
**Re: Salinas, III., Ruben Trey**
**January 21, 2022**
**Page 2**

On November 22, 2021, Merit reported Mr. Salinas failed to show up to random UA testing on November 19, 2021.

On November 23, 2021, this officer met with Mr. Salinas and his counselor at Merit to staff his noncompliance with his treatment program.  Mr. Salinas admitted to have consumed controlled substances, methamphetamine and fentanyl, on November 19, 2021, and that was why he failed to show up for UA testing.

2          **Special Condition #2**: You must undergo a substance abuse evaluation and, if indicated by a licensed/certified treatment provider, enter into and successfully complete an approved substance abuse treatment program, which could include inpatient treatment and aftercare upon further order of the court. You must contribute to the cost of treatment according to your ability to pay. You must allow full reciprocal disclosure between the supervising officer and treatment provider.

**Supporting Evidence**: Mr. Salinas is considered to be in violation of his supervised release conditions by being unsuccessfully discharged from outpatient substance abuse counseling services at Merit on December 8, 2021.

On July 8, 2021, this officer met with Mr. Salinas after he released from custody on July 7, 2021.  Mr. Salinas reviewed and signed the judgment and sentence, which outlines the conditions of his term of supervised release.

On December 8, 2021, Mr. Salinas was unsuccessfully discharged from outpatient substance abuse treatment services at Merit due to lack of attendance and using a controlled substances without a valid prescription.

3          **Special Condition #2**: You must undergo a substance abuse evaluation and, if indicated by a licensed/certified treatment provider, enter into and successfully complete an approved substance abuse treatment program, which could include inpatient treatment and aftercare upon further order of the court. You must contribute to the cost of treatment according to your ability to pay. You must allow full reciprocal disclosure between the supervising officer and treatment provider.

**Supporting Evidence**: Mr. Salinas is considered to be in violation of his supervised release conditions by failing to show up for intensive outpatient substance abuse counseling at Merit since January 5, 2022.

On July 8, 2021, this officer met with Mr. Salinas after he released from custody on July 7, 2021.  Mr. Salinas reviewed and signed the judgment and sentence, which outlines the conditions of his term of supervised release.

On January 4, 2022, Mr. Salinas underwent an intake appointment at Merit and was admitted to intensive outpatient treatment services.  He was scheduled to start his intensive outpatient treatment program on January 5, 2022.

On January 13, 2022, Mr. Salinas' counselor at Merit reported that Mr. Salinas has not contacted Merit since his intake appointment to start treatment services.  The counselor stated she could not get in contact with Mr. Salinas.

Prob12C
**Re: Salinas, III., Ruben Trey**
**January 21, 2022**
**Page 3**

As of the date of this petition, Mr. Salinas has not contacted Merit as required to maintain treatment services.

4            **Standard Condition #2**: After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

**Supporting Evidence**:  Mr. Salinas is considered to be in violation of his supervised release conditions by failing to report to the probation officer since January 14, 2022.

On July 8, 2021, this officer met with Mr. Salinas after he released from custody on July 7, 2021.  Mr. Salinas reviewed and signed the judgment and sentence, which outlines the conditions of his term of supervised release.

On July 14, 2022, and after being unable to contact Mr. Salinas via telephone calls and text messages, this officer attempted to contact Mr. Salinas at his listed residence to address his treatment status. This officer spoke with Mr. Salinas' stepfather and asked about Mr. Salinas' whereabouts.  Mr. Salinas' stepfather stated he did not know of Mr. Salinas' whereabouts.  I left Mr. Salinas' stepfather my business card with instruction for Mr. Salinas to contact this officer upon his return to the residence on this date.  Mr. Salinas' stepfather stated he would instruct Mr. Salinas and Mr. Salinas' mother to contact this officer upon their return to the residence.

As of the date of this petition, Mr. Salinas has not contacted this probation officer and his whereabouts remain unknown.

5            **Standard Condition #9**: If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

**Supporting Evidence**:  Mr. Salinas is considered to be in violation of his supervised release conditions by failing to report to the probation officer that he had law enforcement contact with officers from the Grandview Police Department (GPD) on January 16, 2022.

On July 8, 2021, this officer met with Mr. Salinas after he released from custody on July 7, 2021.  Mr. Salinas reviewed and signed the judgment and sentence, which outlines the conditions of his term of supervised release.

On January 16, 2022, per GPD incident number 22V0216 dated January 19, 2022, at approximately 8:59 a.m., officer Abarca was dispatched to 106 Birch Street in the City of Grandview, for a weapons offense. Dispatch advised the anonymous reporting party reported there was a silver Chevrolet Equinox in the alleyway, the occupants were smoking meth and waving a gun around. Sgt. Glasenapp responded to assist. He proceeded off of East Wine Country Road and went South on Ash Street. Dispatch updated that the vehicle was leaving toward the bank in the alleyway. Sgt. Glasenapp observed a silver sport utility vehicle(SUV) southbound in the alleyway. He observed SF at a gate that leads to the alley on the North side of his residence.

Sgt. Glasenapp drove to East Second Street then eastbound on East Second Street.  He did not see the vehicle. He looked South through the alleyway and observed the SUV at East Third Street. It then went southbound on Birch Street to East Third Street.  He no longer

observed the vehicle. He drove to the alleyway where he last saw the vehicle and observed the SUV turning around at the Alpha Apartments (211 Ash Street). The parking lot can be accessed off the alleyway and extends to Ash Street. The vehicle appeared to go westbound through the parking lot toward Ash Street. Sgt. Glasenapp drove onto Ash Street and observed the vehicle northbound. The driver briefly stopped at the stop sign, then turned quickly. There had been an eastbound vehicle the suspect driver pulled away from at the stop sign.  He then had to brake suddenly to avoid pulling out in front of the eastbound vehicle. The driver took a hard left, traveling partially on the eastbound lane to make the left turn faster so it did not have to wait for the crossing vehicle. The driver cut through the US Bank parking lot and went southbound in the alleyway. At this point, it was clear the driver was attempting to elude Sgt. Glasenapp. His vehicle's emergency lights and siren were not activated as he was trying to overtake the suspect vehicle. The driver accelerated in the alleyway and cut through the parking lot at Grandview Physical Therapy. Sgt. Glasenapp then lost the vehicle as he slowed down near a wood fence as the rear driver's side window was rolled down, he could see an occupant inside and became concerned the occupants were going to shoot at him.

Sgt. Glasenapp drove out onto East Third Street and did not see the vehicle eastbound. He checked side streets, but did not locate the vehicle. He lost the vehicle at approximately 09:05 a.m. The vehicle was last seen leaving 106 Birch Street at approximately 09:03 a.m. Sgt. Glasenapp was able to locate the vehicle, a silver 2005 Chevrolet Equinox WA license plate number BNJ4583, on Fir Street near East Fourth Street, and it was parked facing the wrong direction, approximately 2 to 3 feet off the curb. The vehicle was also parked on a small snow bank. The vehicle appeared unoccupied.

Officer Abarca and Sgt. Glasenapp cleared the vehicle of any occupants. There was no one inside the vehicle. While standing outside the vehicle, they could see aluminum foil with burnt residue in it and two cell phones on the backseat. Sgt. Glasenapp did not enter the vehicle. Sgt. Glasenapp attempted phone contact with the registered owner, JA.  There was no answer. The next tow in rotation was requested. Officer Abarca requested Sunnyside Police Department send an officer to the registered owner's address in an attempt to contact the registered owner.

Sgt. Glasenapp spoke to Sunnyside police officer Ausland who advised the parents were currently in Mexico, but he had contacted victim (CA) and provided Sgt. Glasenapp a phone number for CA. Sgt. Glasenapp contacted CA via phone and advised he did not know where the Equinox was. CA stated it had been gone for a couple of days. Sgt. Glasenapp asked if it had been stolen and CA thought so because none of the family has it and it was gone. Sgt. Glasenapp advised CA, that it was currently in Grandview, and the driver had just ran from him.  He stated it was definitely stolen then. Sgt. Glasenapp asked if CA wanted to file a report for it being stolen and CA responded in the affirmative. Sgt. Glasenapp requested officer Ausland to recontact CA and take a report.

Officer Abarca detailed officer Ausland to 106 Birch Street to speak to SF. Officer Ausland returned and advised that victim (SF) had reported someone named Efrain Gaitan had been driving and that there was a female and another male with long hair in the car as well.

Officer Ausland called Sgt. Glasenapp back and advised CA had reported the vehicle stolen and when he asked if he had any idea who had taken the car, CA advised he did not; then

Prob12C
**Re: Salinas, III., Ruben Trey**
**January 21, 2022**
**Page 5**

another resident stepped forward and stated they did. They advised that Mr. Gaitan had asked for a ride to Toppenish, on January 15, 2022, so he could sell a Glock. They refused and Mr. Gaitan left upset. The resident left and when they came back, the car was gone. They reported that the theft had occurred sometime after 2 p.m.

The vehicle was impounded to the police department (PD) Shop by Kay's Towing. While en route to the PD shop, Sgt. Glasenapp observed a male and female crossing East Second Street between Ash Street and Division Street. Sgt. Glasenapp noted the male in front, wearing a grey sweatshirt with red underneath, who had been walking with a female.  They started to walk quickly and possibly run southbound in the alleyway. He turned down the alleyway and observed the female, later identified as Jimena Orduno, cut behind a vehicle and walk into the courtyard area of  204 and 206 Ash Street apartments. He did not see the male anymore. The male was later identified as Ruben Trey Salinas.

Sgt. Glasenapp drove down Ash Street in an attempt to identify the male. As he drove down Ash Street, he observed both individuals at a door to an apartment.

Once at the shop, officer Abarca sealed the vehicle with evidence tape. At approximately 10:18 a.m., while en route to attempt follow up on this case, Sgt. Glasenapp observed Mr. Salinas and Ms. Orduno walking westbound on the sidewalk on the 600 block of East Wine Country Road along the south side of the roadway. He noted the two were the same two he observed in the alleyway between Ash Street and Division Street. Sgt. Glasenapp still did not know their identity at this point. He turned right onto Elm Street, then went through the Safeway parking lot in an attempt to contact them. Sgt. Glasenapp noted they were no longer on the sidewalk or in the area where he had last seen them. Officer Abarca, who had been just behind Sgt. Glasenapp on East Wine Country Road, advised they were cutting back behind the apartments by Safeway. Sgt. Glasenapp then observed Mr. Salinas walking on the West side of the apartment building. Shortly behind him was Ms. Orduno.  Sgt. Glasenapp now recognized Mr. Salinas, but still did not know who Ms. Orduno was.  He kept an eye on both, who were now westbound on the North sidewalk along East Wine Country Road. Officer Abarca advised they had dropped a firearm behind the apartments.

Officer Abarca located a Glock firearm inside a tan colored beanie. Sgt. Glasenapp contacted Mr. Salinas and Ms. Orduno. Neither were in custody at this point, Sgt. Glasenapp's patrol car lights were not activated and neither were advised they were being detained. Sgt. Glasenapp asked what they were doing and they advised walking. Sgt. Glasenapp advised them it was weird because one of them had just dropped a gun behind the apartment. Mr. Salinas responded with "What the hell?" and stated they did not. Sgt. Glasenapp attempted to take photos of both to show their clothing description and attempt to identify the female. Both left walking on Elm Street. Sgt. Glasenapp had noted Ms. Orduno was eating a donut and had a Safeway donut box.

Sgt. Glasenapp detailed to Safeway and reviewed surveillance video. He observed the female walking out of the store and meet up with Mr. Salinas who was waiting outside the store. Sgt. Glasenapp noted in the video, Ms. Orduno was not wearing a beanie. The video outside the store is poor quality and Mr. Salinas was some distance away from the camera; therefore, Sgt. Glasenapp was unable to determine if Mr. Salinas was wearing a beanie.

Prob12C
**Re: Salinas, III., Ruben Trey**
**January 21, 2022**
**Page 6**

Officer Abarca was able to determine the female was Jimena Orduno and Sgt. Glasenapp confirmed with a photo of her that was the female he had contacted with Mr. Salinas. At approximately 2:30 p.m., Sgt. Glasenapp contacted CA via phone and asked if he was able to come to the PD to provide consent to search the vehicle. CA gave permission for police to search the vehicle, but that he did not have a ride. He asked if he could just give permission by phone. Sgt. Glasenapp turned on his department issued cell phone recorder and recorded the phone conversation. CA advised he and his older brother had been left in charge of things while his parents were gone. CA provided consent to search the vehicle. Sgt. Glasenapp advised CA once the search was completed, the vehicle would be released back to Kay's Towing.

At approximately 2:53 p.m., officer Abarca and Sgt. Glasenapp detailed to the PD shop and searched the Chevrolet Equinox, WA license plate number BNJ4583. Sgt. Glasenapp located a notebook on the rear driver's side floorboard. In the notebook were the names Ruben Salinas and Jimena Orduno written several times. In the trunk area there were several bags. In one of the bags, Sgt. Glasenapp located a document with Mr. Salinas' photo and name on it. Several of the bags contained clothing and toiletries. The vehicle was released back to Kay's Towing.

Officer Abarca was able to obtain a statement from SF advising that Mr. Salinas had shown up in the Equinox with Mr. Gaitan and Mr. Gaitan was driving. Officer Abarca also learned that Mr. Salinas had pointed the firearm at SF.

The U.S. Probation Office respectfully recommends the Court issue a warrant requiring the defendant to appear to answer to the allegations contained in this petition.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:   January 21, 2022

s/Arturo Santana

Arturo Santana
U.S. Probation Officer

---

## THE COURT ORDERS

[ ]   No Action
[X]   The Issuance of a Warrant
[ ]   The Issuance of a Summons
[ ]   Other

Signature of Judicial Officer

1/21/2022

Date